**BARBARA R., et al.**

v.

**Gerald TIROZZI, et al.**

**No. Civil H–83–991 (PCD).**

United States District Court,
D. Connecticut.

July 22, 1987.

---

142

Douglas Crockett, Connecticut Legal Services, Willimantic, Conn., for plaintiffs.

Joseph I. Lieberman, State Atty. Gen., Robert W. Garvey, John H. Doorman, John R. Whelan, Asst. Attys. Gen., Hartford, Conn., for defendants.

## RULING ON PLAINTIFFS' MOTION FOR ATTORNEY FEES

DORSEY, District Judge.

Plaintiffs have moved for attorney fees in their suit against state officials to vindicate the rights of mentally handicapped children to an appropriate education. The motion is granted.

### Background

Plaintiffs are children and parents who were unable to obtain decisions from state educational agencies concerning their claims that the defendant Department of Children and Youth Services failed to provide them with appropriate special education while the children were residents at Long Lane juvenile correctional center. Plaintiffs alleged that the Connecticut State Board of Education was violating the fourteenth amendment due process rights of mentally handicapped children. Defendants allegedly failed to adhere to the "procedural safeguards" provisions of the Education for All Handicapped Children Act ("EHA"), 20 U.S.C. §§ 1401–1461,[1] and im-

---

**1.** Title 20 U.S.C. § 1415, entitled " "Procedural Safeguards," provides, in pertinent part:

(a) Any State educational agency ... which receives assistance under this subchapter shall

plementing regulations.[2] Specifically, plaintiffs alleged that defendants (1) regularly failed to hold hearings and render decisions within forty-five days of receiving a request for same; (2) repeatedly violated the requirement that hearing officers be independent; and (3) illegally limited the issues which could be raised at these hearings. From data supplied by defendants for 343 hearings over a six year period, the average time from the date a hearing was requested to the day when a decision was issued was one hundred sixty-seven days; in only 6 of 343 hearings was a decision rendered within forty-five days.

Defendants denied wrongdoing and the existence of a requirement that hearings be held and decisions rendered within forty-five days of receipt of a request.

After attempts at settlement proved fruitless, the parties engaged in substantial discovery. Thereafter the parties agreed to a Consent Decree clearly delineating the due process rights of handicapped children in this state. Plaintiffs claim that the Consent Decree incorporates the procedural guarantees they sought to vindicate, thereby entitling them to attorney fees as a "prevailing party" under 42 U.S.C. § 1988. Alternatively, plaintiffs argue their entitlement to attorney fees under the Handicapped Children's Protection Act of 1986 ("HCPA"), Pub.L. No. 99–372, codified at

---

establish and maintain procedures in accordance with subsection (b) through subsection (e) of this section to assure that handicapped children and their parents or guardians are guaranteed procedural safeguards with respect to the provision of free appropriate public education by such [agency]....

(b)(1) The procedures required by this section shall include, but shall not be limited to—

(A) An opportunity for the parents or guardian of a handicapped child to examine all relevant records with respect to the identification, evaluation, and educational placement of the child, and the provision of a free appropriate public education to such child, and to obtain an independent educational evaluation of the child;

....

(C) written prior notice to the parents or guardian of the child whenever such agency

...—

(i) proposes to initiate or change, or

(ii) refuses to initiate or change,

the identification, evaluation, or educational placement of the child or the provision of a free appropriate public education to the child;

....

(E) an opportunity to present complaints with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child.

(2) Whenever a complaint has been received under paragraph (1) of this subsection, the parents or guardian shall have an opportunity for an impartial due process hearing which shall be conducted by the State education agency ... as determined by State law or by the State educational agency. No hearing ... shall be conducted by an employee of such agency ... involved in the education or care of the child.

(c) If the hearing required in paragraph (2) of subsection (b) of this section is conducted by a local educational agency or an intermediate ed-

ucational unit, any party aggrieved by the findings and decision rendered in such a hearing may appeal to the State educational agency which shall conduct an impartial review of such hearing. The officer conducting such review shall make an independent decision upon completion of such review.

(d) Any party to any hearing conducted pursuant to subsections (b) and (c) ... shall be accorded ... the right to written findings of fact and decisions....

2. The Office of Special Education and Rehabilitation Services, Department of Education, issued specific and detailed implementing regulations, including the following:

34 C.F.R. § 300.506(a): A parent ... may initiate a hearing on any of the matters [pertaining to the placement of handicapped children and/or their rights to a free appropriate public education].

34 C.F.R. § 300.510(a): If the hearing is conducted by a public agency other than the State educational agency, any party aggrieved by the findings and decision in the hearing may appeal to the State educational agency.

(b) If there is an appeal, the State educational agency shall conduct an impartial review of the hearing.

34 C.F.R. § 300.512(a): The public agency shall insure that not later than 45 days after the receipt of a request for a hearing:

(1) A final decision is reached in the hearing....

(b): The State educational agency shall insure that not later than 30 days after the receipt of a request for a review:

(1) A final decision is reached in the review; ...

(c) A hearing or reviewing officer may grant specific extensions of time beyond the periods set out in paragraphs (a) and (b) of this section at the request of either party.

*See also* Conn.Gen.Stat. § 10–76h(b).

20 U.S.C. § 1415(e),[3] which not only provided for attorney fees in EHA cases but made them retroactive.

*Discussion*

### I.

A "prevailing party" in a 42 U.S.C. § 1983 action to vindicate constitutional rights is entitled to reasonable attorney fees. 42 U.S.C. § 1988.

Defendant argues against the award of attorney fees under 42 U.S.C. § 1988 on the grounds that: (A) the plaintiffs' exclusive remedy for actions such as this is the EHA, not § 1983, and the EHA did not provide for attorney fees, *Smith v. Robinson*, 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984); (B) the 1986 amendments to the EHA (authorizing attorney fee awards in cases pending at the time *Smith* was decided) is unconstitutional; (C) plaintiffs did not "prevail" in this litigation; and (D) plaintiffs unnecessarily prolonged the litigation. These arguments will be considered in order.

### A.

■ Defendants rely on *Bonar v. Ambach*, 771 F.2d 14 (2d Cir.1985), and *McKenzie v. Smith*, 771 F.2d 1527 (D.C.Cir. 1985), for the proposition that *Smith v. Robinson* makes the EHA, not § 1983, plaintiffs' exclusive remedy. Although attorney fees were there held not available for plaintiffs who pursue their rights under the EHA, the courts left open the possibility—as did *Smith*—of attorney fee awards under § 1988 where plaintiffs are forced to go outside the EHA to obtain relief. As stated in *Smith:*

> [W]hile Congress apparently has determined that local and state agencies should not be burdened with attorney's fees to litigants who succeed, through

resort to the procedures outlined in the EHA, in requiring those agencies to provide free schooling, there is no indication that agencies should be exempt from a fee award where plaintiffs have had to resort to judicial relief to force the agencies to provide them the process they were constitutionally due.

468 U.S. at 1014–15, n. 17, 104 S.Ct. at 3470, n. 17. *See Bonar v. Ambach*, 771 F.2d at 19 ("an independent due process challenge to State procedures might succeed where ... resort to EHA procedures would be futile or inadequate"); *Quackenbush v. Johnson City School Dist.*, 716 F.2d 141, 148 (2d Cir.1983) ("§ 1983 ... suppl[ies] the right of action to a plaintiff who has been denied procedural safeguards under § 1415 and who, as a result thereof, has not received the findings and decision following the impartial due process administrative hearing contemplated by § 1415").

Plaintiffs here sought from defendants the timely hearings mandated by state and federal law—precisely the situation exempted by *Smith* from its holding that EHA provides the exclusive remedy in cases involving the rights of mentally handicapped school children.[4] Accordingly, plaintiffs are not ineligible for attorney fees pursuant to § 1988.

### B.

Yet, even if the EHA were plaintiffs' exclusive remedy, the 1986 amendment to the EHA authorized attorney fee awards in EHA cases retroactive to July 3, 1984—the day before *Smith* was decided. The clear intent of Congress was to negate *Smith*. The constitutionality of those amendments has been upheld in a definitive opinion by Nevas, J., in *Counsel v. Dow*, 666 F.Supp. 366 (D.Conn.1987).

---

**3.** Title 20 U.S.C. § 1415(e) provides, in relevant part: "In any action or proceeding brought under this subsection, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents or guardians of a handicapped child or youth who is the prevailing party."

**4.** Indeed, the plaintiffs in *Smith* had already been awarded attorney fees under § 1988 be-

cause they had prevailed in their action under § 1983 to force a local education association to adhere to the procedural safeguards of the EHA. Having successfully asserted those rights, the plaintiff further appealed the agency's final decision as to the educational placement of the child. That challenge was held not to be the basis for an attorney fee award under § 1983.

Accordingly, plaintiffs are eligible for attorney fees under the EHA.

## C.

█ Whether under EHA or § 1988, plaintiffs must establish that they prevailed to be eligible for attorney fees. A plaintiff is a "prevailing party" if he or she has succeeded "on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1982). The fact that the litigation ended by a settlement does not preclude plaintiffs from claiming attorney fees as a "prevailing party." *Maher v. Gagne*, 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980).

The Consent Decree herein provides in detail for scheduling EHA hearings and decisions to ensure compliance with what it is specifically acknowledged to be "the 45 day time limit provided by state law ... and the time limit provided in [federal regulations]." Consent Decree, Exhibit A. When viewed in light of defendants' significant and repeated departures from the forty-five day time limit before this action was brought, and the lack of any procedure established to assure adherence to the time limits fixed by law, the Consent Decree establishes the most important of plaintiffs' objectives: to force the state to recognize its responsibility to hold hearings and render decisions within forty-five days of receiving a request for an EHA hearing as the law required.

█ It is true that plaintiffs dropped their second claim regarding the issues which could be raised at EHA hearings and their third claim regarding the independence of hearing officers. The second claim was abandoned, however, only after the Connecticut legislature enacted a measure, drafted by counsel for plaintiffs, which accorded handicapped children equivalent relief. These facts do not detract from the fact that plaintiffs prevailed on a principal issue in the law suit—the lack of timely hearings and decisions. Where two or more claims challenge a single procedure or practice, it is inappropriate to refuse to award a reasonable attorney fee where one claim was successful. *McCann v. Coughlin*, 698 F.2d 112, 130 (2d Cir. 1983); *cf. Hensley v. Eckerhart*, 461 U.S. at 440, 103 S.Ct. at 1943 (hours spent solely on unsuccessful claims should be excluded where unsuccessful claims are "distinct in all respects" from the successful claims). Here, at most, a small amount of attorney time was spent on the issues not resolved in the Consent Decree, and all three issues in the complaint concern state compliance with EHA hearing regulations. Accordingly, plaintiffs have prevailed on an issue central to their suit and attorney fees related thereto will be awarded.

## D.

█ Defendants contend that attorney fees, if held to be awarded, should nevertheless be denied or drastically reduced because plaintiffs prolonged this litigation by failing to respond positively to defendants' settlement overtures and by unleashing a "barrage" of discovery requests.

Defendants wrote plaintiffs on January 31, 1984, to propose that if plaintiffs dropped their claim that the state is obligated under the EHA to provide hearings and decisions within forty-five days of the filing of a request, it might be possible to resolve the case without extensive litigation. Defendants' Memorandum, Exhibit A ("regardless of whether the timelines are mandatory or directory, or whether they allow a 45 or 75 day period"). No mention was then made of plaintiffs' other claims— the independence of hearing officers and the scope of the hearings. Rather than proposing to establish compliance with federal timeline requirements, defendants' proposal rejected the concept that such requirements existed. Nevertheless, plaintiffs answered on February 28, 1984, and left open the possibility of further exchanges pointed toward settlement. Defendants unjustifiably · interpreted plaintiffs' response as a "complete rejection" of its own settlement efforts and unilaterally broke off negotiations. Defendants' Memorandum, Exhibit B. By abjectly failing, if not refusing, to work toward a resolution

of the dispute based on an acceptance of the time limits established by law and working toward a system which ensured compliance with such limits, defendants, not plaintiffs, failed to engage in meaningful settlement discussions.

The extensive discovery engaged in by plaintiffs was plainly required by defendants' litigation posture. Defendants denied the existence of a forty-five day requirement. Plaintiffs' discovery was directed to proving that defendants knew of said requirement and that they regularly failed to adhere to it. For example, plaintiffs uncovered correspondence between the United States Office of Civil Rights of the United States Department of Education and the former Connecticut Commissioner of Education in which the federal agency demanded—and the Commissioner agreed—that Connecticut bring its procedures into compliance with the federal timeline requirements for EHA hearings. In addition, plaintiffs attached, as Exhibit A to their memorandum in opposition to defendants' motion for more definite statement, a memorandum from the Chief of the Connecticut State Department of Education's Division of Instructional Services, Bureau of Pupil Personnel and Special Educational Services, dated April 21, 1980, which stated that a review conducted by the Bureau of Education for the Handicapped had found that Connecticut was not meeting the "federal regulatory requirements"; the memorandum recommended corrective measures and specifically referred to the "federally *mandated* forty-five day period [in which to render a decision, which commences] from the receipt of the request [for a EHA hearing]." (Emphasis added.) Indeed, only four weeks after plaintiffs filed suit—and before defendants had answered—Commissioner of Education Tirrozzi, a defendant in this action, sent a memorandum to school superintendents and Directors of Special Edu-

cation throughout the state informing them that Connecticut had been experiencing difficulty meeting the requirements of the EHA as specified in 34 C.F.R. § 300.512 and Conn.Gen.Stat. § 10–76h(b); the memorandum acknowledged that the state must adopt new procedures for scheduling hearings in order to bring Connecticut into compliance with state and federal regulations.

The depositions of state education officials which plaintiffs noticed, and the interrogatories and document requests which they served, were all needed to establish what defendants refused to concede in their answer, to wit, that there was a pattern and practice of denial of the due process rights of mentally handicapped children of school age in Connecticut. The deposition testimony of hearing officers and administrators demonstrated that no mechanism was in place to ensure that the timeline requirements of the EHA were met. The responses to interrogatories requesting records of EHA hearings held in Connecticut revealed that in only 6 of 343 instances did the state render a decision within forty-five days and its average was one hundred sixty-seven days. To be sure, collecting and analyzing this data consumed an enormous amount of time, but the very fact that the state was making little or no effort to ensure adherence to the federally mandated timelines contributed to the problem: the state's records were incomplete in many instances and those charged with administering the hearings were not conscientious about keeping track of whether time requirements were being met. Thus, defendants were responsible both for the necessity and for the difficulty of discovering this data.[5] Only after discovery was complete were plaintiffs in a position to serve the requests for admission which forced a public acknowledgment of what had previously been denied and

---

5. The Education Department, i.e., the named defendants, are thus shown to have been fully cognizant of the time limits required by the law. The record suggests some minute stirrings toward compliance, though the record shows a constant, unexplained and unjustified non-compliance. This suggests that the posture present-

ed in court, and initially in negotiations, was the position adopted by counsel notwithstanding the clear requirements of the law and defendants' actual awareness thereof, a position so unfounded in fact and law as to approach the embrace of Rule 11, Fed.R.Civ.P.

prompted the settlement discussions which led to the Consent Decree.

Plaintiffs are plainly entitled to attorney fees.

## II.

Plaintiffs have submitted affidavits in support of their motion. Counsel's professional background and experience is fully described and the time spent on this case is documented through computer printouts.

Attorney Crockett, who has been with Legal Services since December 1968 and who has concentrated his practice in the area of special education for the past five years, claims 254.85 hours at a requested hourly rate of $125, for a total of $31,-856.25. After reviewing the hours and noting some excesses, for example, that 24 hours were expended drafting the complaint, the 254.85 will be reduced by 20%, for a total of 203.88 hours found to have been reasonably expended in this case. The hourly rate found to be reasonable is $110, for a total fee award of $22,426.80.

There is a claim for 19.11 hours at $50 per hour, for a total of $955.50 for the services of a computer programmer. The hours and rate are deemed to be reasonable and the $955.50 is, therefore, approved.

There is a claim for costs of $466.34 and $431.01 for transcripts from two depositions, which is approved, for a total of $897.35.

Attorney Crockett has submitted a supplemental motion for an award for his time spent responding to defendants' objections to his earlier filed motion for attorney fees. Thirty (30) hours is found reasonably to have been required and, at $110 per hour, $3,300 is allowed.

Attorney Mary Conklin, who helped out in support of plaintiff's motion for attorney fees, is allowed 24 hours at $80 per hour, for a total of $1,920. Her travel time will be allowed, 2.5 hours, at $50 per hour, or $125. The total allowed for her is thus $2,045.

Accordingly, a total award of attorney fees in the amount of $29,624.65 shall enter on behalf of the plaintiffs.

SO ORDERED.