D.H. By and Through His Parents and
Next Friends, MR. & MRS. H.

v.

ASHFORD BOARD OF EDUCATION.

No. 3:96CV01403 (DJS) (TPS).

United States District Court,
D. Connecticut.

March 27, 1998.

Joy K. Fausey, David C. Shaw, Richard T. Roznoy, Hartford, CT, for plaintiff.

William Connon, Mark J. Sommaruga, Sullivan, Schoen, Campane, & Connon, Hartford, CT, James G. Williams, Cella, McKeon & Williams, North Haven, CT, for defendant.

## ORDER

SQUATRITO, District Judge.

Upon review and pursuant to 28 U.S.C. § 636(b)(1)(A) and Rule 2 of the Local Rules for United States Magistrate Judges (D.Conn.), the magistrate's ruling [**Document No. 41**] is **AFFIRMED, APPROVED and ADOPTED** as the ruling of this court.

The clerk is **DIRECTED** to **CLOSE** this case.

## RECOMMENDED RULING ON PENDING MOTIONS FOR SUMMARY JUDGMENT

SMITH, United States Magistrate Judge.

This is an action for attorney's fees and costs incurred in connection with administrative proceedings initiated by the plaintiff under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* Now pending before the court are the parties' cross-motions for summary judgment, as well as the plaintiff's motion for additional fees and costs.

For the reasons stated below, the plaintiff's motions for summary judgment [doc. # 21] and for additional fees and costs [doc. # 33] should be GRANTED; the defendant's motion for summary judgment [doc. # 24] should be DENIED.

## STANDARD OF REVIEW

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A court must grant summary judgment " 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact.' " *Miner v. City of Glens Falls,* 999 F.2d 655, 661 (2d Cir.1993) (citation omitted). "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Aldrich v. Randolph Cent. Sch.*

*Dist.,* 963 F.2d 520, 523 (2d Cir.1992) (quoting *Anderson,* 477 U.S. at 248), *cert. denied,* 506 U.S. 965, 113 S.Ct. 440, 121 L.Ed.2d 359 (1992).

After discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." *Aldrich,* 963 F.2d at 523. Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.1991), *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991).

## FACTS

Based upon the submissions of the parties the court finds the following.

The plaintiff, D.H., was a 14 year-old student in the eighth grade at Ashford School in Ashford, Connecticut at the initiation of the instant action. The defendant, Ashford Board of Education, ("Board"), operates the Ashford School. D.H. has been identified by the Board as a child who has learning disabilities and attention deficit disorder without hyperactivity. He has been receiving special education under the IDEA since 1987 and has been the subject of Planning and Placement Team ("PPT") meetings in the Ashford, Connecticut school system at least since June 17, 1987, when the first PPT meeting was convened to address D.H.'s educational program and transition into first grade.

In the sixth grade, D.H.'s 1993 mid-term education evaluation indicated that his math was "very good," that in reading he was "doing excellent work," that he had a "B average" in spelling, an "A average" in language and was "very good" and "conscientious" in science and writing. However, in early 1994 D.H.'s classroom progress began to deteriorate. A PPT meeting summary dated March 25, 1994, indicates that D.H.

began experiencing some apprehension, fear and self-esteem issues in the classroom. At that point however, the school board still claimed that D.H. was making good progress. In the spring of 1994 D.H. began attending occupational therapy ("OT") sessions which were paid for by the Board and provided by Therapeutic Enterprises.

By the fall of 1994, D.H. had become reluctant to participate in the classroom and was experiencing particular difficulties in his math performance. He was also experiencing anger and frustration at home. In response to these developments, D.H.'s parents requested that their son no longer receive support in the Resource Room at school, feeling the recent negative developments in D.H.'s classroom experience was related to D.H.'s negative experiences while receiving academic support in the Resource Room.

Over the next year, D.H.'s parents became increasingly dissatisfied with their son's educational program. In a letter to Mr. Richard Butler, Superintendent of Ashford Schools, dated November 1, 1994, D.H.'s mother expressed her dissatisfaction with D.H.'s educational program. In that same letter, D.H.'s mother also detailed her distress in the fact that several PPT recommendations were not being implemented. Throughout early 1995, the parents continued to be in disagreement with the Board regarding their son's educational program. The parents disputed the Ashford School's recommendations and believed that other strategies for their child's progress should be implemented.

In late summer of 1995, D.H.'s parents met privately with Dr. Miriam Cherkes-Julkowski, a professional education consultant, psychologist and Professor of Psychology at the University of Connecticut, to seek advice and assistance regarding D.H.'s educational performance, as well as recommendations for modifications and adaptations to their son's educational program. Following this meeting with Dr. Cherkes-Julkowski, the Board agreed to pay for Dr. Cherkes-Julkowski to perform a Diagnostic Cognitive Processing Evaluation and Academic Achievement Evaluation. The Board also agreed to pay for a subsequent educational evaluation by Dr. Judy Itzkowitz. Dr. Itzkowitz was hired to detail a summary assessment of D.H.'s needs, with recommendations for specific strategies to be applied as modifications and adaptations to his current education program.

By the fall of 1995, D.H. was in the eighth grade, in his final year at the Ashford School prior to transfer to the E.O. Smith High School, the regional school serving Ashford. The parents continued to express their dissatisfaction with the Board's educational plan. On September 11, 1995, the parents notified the Board that they were still not in agreement with the IEP identified for D.H. and that they expected the recommendations of the independent consultants to be implemented upon receipt.

Dr. Cherkes-Julkowski's study, sent to the Board on September 27, 1995, identified numerous modifications and adaptations to D.H.'s educational program for immediate implementation. Subsequent PPT meetings did not address whether the recommendations of the outside consultant would be implemented. Dr. Cherkes-Julkowski then followed her report with a letter to the Director of Pupil Personnel for the Ashford Schools dated November 22, 1995, specifically indicating the program adaptations that she recommended the Board immediately implement for D.H.

Additional PPTs were scheduled in early 1996. Although the report from Dr. Cherkes-Julkowski was reviewed at these sessions, the Board had not yet implemented the program modifications and adaptations identified by Dr. Cherkes-Julkowski in the prior year. Additionally, Dr. Itzkowitz presented her report on March 15, 1996. Dr. Itzkowitz's report noted that the recommendations of Dr. Cherkes-Julkowski had not been implemented and also contained recommendations for D.H.'s educational program. The Board did not implement Dr. Itzkowitz's recommended changes either.

On April 3, 1996, D.H.'s father wrote a letter to the Director of Pupil Personnel noting the Board's failure to provide support and modifications for D.H. in the regular classroom and its sporadic and delayed implementation of past recommendations. On

April 18, 1996, D.H.'s father wrote to the Board explaining that its failure to implement a proper IEP for his son was unacceptable to him and his·wife. That same day, the parents wrote to the Connecticut Department of Education requesting a due process hearing under the IDEA. In their request, the parents challenged the Board's failure to provide reasonable supplementary aids and services to support D.H.'s regular classroom placement (including an acceptable independent consultant) as well as its failure to modify the curriculum as necessary to enable D.H. to receive the free and appropriate public education ("FAPE") to which he is entitled. Upon receipt of the letter request, the State appointed a hearing officer, compiled a record for the hearing, notified the parties as to the procedures and made the record available to all parties prior to the hearing.

The State scheduled a pre-hearing conference for May 10, 1996, and a hearing for June 6, 1996. During the pendency of the hearing process the parents, their advocates and the Board discussed D.H.'s education plan. As result of these discussions, the Board stipulated to a resolution of the matter at the pre-hearing conference on May 10, 1996. However, the plaintiff's did not accede to the stipulation at the pre-hearing conference due to their conviction that an order of the hearing officer was necessary to enforce the proposed resolution.

On June 6, 1996, the Hearing Officer entered the stipulation as an Interim Decision. On September 12, 1996, the Interim Decision of the Hearing Officer became the Final Decision and Order in the case, with minor modification due to address changes and D.H.'s transition into high school.[1] Following the Order, the Board implemented the previously recommended program adaptations and modifications to D.H.'s IEP.

At the time the pending motions were filed in this case, D.H. was attending regular high school classes and was participating in an algebra class. Both D.H.'s parents and Dr. Itzkowitz have observed that the supplementary services and resources provided in the post-hearing IEP have had a positive impact on D.H.'s learning and his self-esteem.

## DISCUSSION

The issues before the court are: (1) whether D.H. was the prevailing party in the administrative proceeding and is therefore entitled to attorney's fees and; (2) if so, the amount of attorney's fees that should be awarded.

### I. "Prevailing Party" Status:

The IDEA provides that "[i]n any action or proceeding under this subsection, the court, in its discretion, may award reasonable attorney's fees as part of the costs to the parents or guardian of a child or youth with a disability who is the prevailing party." 20 U.S.C. § 1415(e)(4)(B).

The legal standard for determining "prevailing party" status in an IDEA attorney's fees action is the same as that governing the award of attorney's fees in civil rights litigation pursuant to 42 U .S.C. § 1988. *See Angela L. v. Pasadena Indep. Sch. Dist.*, 918 F.2d 1188, 1193 (5th Cir.1990) (citing legislative history of IDEA); *Barbara R. v. Tirozzi*, 665 F.Supp. 141, 145 (D.Conn.1987) (prevailing party inquiry under IDEA is the same as that under § 1988). Under this standard, a party may be deemed "prevailing" for attorney's fees purposes if the court finds the party succeeded on "any significant issue in litigation which achieves some of the benefits the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *See Christopher P. v. Marcus*, 915 F.2d 794, (2d Cir.1990),

---

1. The Hearing Officer's Order directed the following: (1) the Board was to retain Dr. Itzkowitz as an independent consultant to the PPT, with broad powers to apply her discretion as consultant, to attend PPT meetings, observe D.H., provide training to teachers and staff and generally assist the PPT in development and implementation of a modified IEP for the remainder of the 1995–96 and 1996–97 school years; (2) the PPT

was to implement the recommendations of both Dr. Itzkowitz and Dr. Cherkes–Julkowski during the remainder of the 1995–96 school year; (3) the Board was to convene a joint PPT with the regional school district to plan D.H.'s transition to high school; and (4) the Board was to retain a consultant on assistive technology (computer education) to develop recommendations for the PPT.

*cert. denied,* 498 U.S. 1123, 111 S.Ct. 1081, 112 L.Ed.2d 1186 (1991) (discussing the standard for determining prevailing party status). The standard is a generous one. *Hensley,* 461 U.S. at 433.

■ The Supreme Court has explained that for a plaintiff to successfully claim prevailing party status, he must demonstrate that: (1) he obtained relief on a significant claim in the litigation; (2) such relief effected a material alteration in his legal relationship with the defendant; and (3) the alteration is not merely technical or de minimis in nature. *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 791–93, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989). A trial on the merits is not necessary. A plaintiff may prevail even if settlement ends the dispute. *Maher v. Gagne,* 448 U.S. 122, 129, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980). Therefore, to determine whether D.H. is a prevailing party within the meaning of the IDEA, the court must evaluate the facts of the instant action in light of the factors set forth in *Texas State Teachers Ass'n.*

*A. Substantive Relief*

■ The Board makes two arguments in opposition to the plaintiff's claims under the first prong of the *Texas State Teachers Ass'n* test. First, the Board claims that the Hearing Officer's Order does not provide any substantive relief to the plaintiff, and as such, the plaintiff is not a prevailing party. Second, the Board argues that even assuming the plaintiff did obtain relief, there is not a sufficient causal connection between the relief obtained in the Order and the plaintiff's exercise of his due process rights in order for the plaintiff to be a prevailing party under the IDEA. The court is not persuaded by either argument.

In support of its first argument regarding the lack of substantive relief, the Board contends that the text of the Order does not call for performance of specific obligations on the part of the defendant to make modifications, changes or supplements to D.H.'s program. Rather, the Board argues that the text of the

Order merely requires the defendant to continue to engage in it's statutory duty to perform an ongoing evaluation of D.H. This argument is a misstatement of the substance and impact of the Order.

The record establishes that the Order required the Board to implement an effective and appropriate IEP for D.H., not merely to continue the evaluative process. For example, the Order includes express provisions obligating the Board to make specific modifications, changes and supplements to D.H.'s program. Under the Order, the Board is required: (1) to retain Dr. Itzkowitz as an independent consultant to the PPT regarding D.H.'s program, with broad powers to apply her discretion as consultant, to attend PPTs, make observations of D.H., provide training to teachers and staff and generally assist the PPT in development and implementation of a modified IEP for the remainder of the 1995–96 and 1996–97 school years; (2) to implement the recommendations of both Dr. Itzkowitz and Dr. Cherkes–Julkowski during the remainder of the 1995–96 school year; (3) to convene a joint PPT with regional school district personnel to plan D.H.'s transition into high school; and (4) to retain a consultant on assistive technology (computer education) to develop recommendations for the PPT. Contrary to the Defendant's assertions, the record clearly establishes that D.H. was successful on significant issues in the litigation, achieving the relief and objectives sought.

■ The Board also argues that, assuming the plaintiff did obtain some relief, there is an insufficient causal connection between the administrative hearing and relief obtained in the Order in order for the plaintiff to be considered a prevailing party under the IDEA. Specifically, the Board contends that the implementation of a modified IEP was merely another step in the evaluative process that would have occurred, regardless of whether D.H.'s parents asserted their due process rights in demanding an administrative hearing.[2] The plaintiff, for his part,

---

**2.** The Board relies on *Patricia E. v. Board of Educ. of Comm. High School Dist. No. 155,* 894 F.Supp. 1161 (N.D.Ill.1995), in support of this

proposition. The court in *Patricia E.* held that an IDEA plaintiff who obtained relief in an administrative hearing did not qualify as a prevail-

contends any change in the Board's position was the result of his parents' request for an administrative hearing, not a result of the Board's evaluative process. The record does not support the Board's view of the facts.

The record establishes that for an extended period of time prior to the parents' request for a due process hearing, the Board did not meaningfully or critically examine, consider or perform the services repeatedly requested by the parents and now required by the Order. Prior to the administrative hearing, D.H.'s parents had consistently disagreed with the Board's proposed IEPs for almost two years, while the Board forewent numerous opportunities to implement the requested changes to D.H.'s program. Moreover, there is no record of any meaningful discussion during eleven PPT meetings held between March of 1994 and March of 1996 relating to the requested services and modifications to D.H.'s IEP which are now in the Order.

The record makes clear that there was a historic failure on the part of the Board to provide these services during an extended evaluative process. D.H.'s parents repeatedly requested that their child receive the modifications, services and supplements necessary for their child to enjoy the FAPE to which he is entitled; the Board repeatedly

failed to act upon their requests. As a result, the court finds that D.H.'s ultimate receipt of the benefits delineated in the Order was a direct result of the parents' request for an administrative hearing. By compelling the Board to attend the hearing, D.H. and his parents accomplished all they had sought to achieve in pursuing their due process rights under the IDEA.[3]

In summary, the court is satisfied that the parties' stipulation, subsequently entered as the Order of the Hearing Officer, granted D.H. the substantive relief that his parents sought in pursuing a due process hearing. Accordingly, the plaintiff has satisfied the first factor set forth in *Texas State Teachers Ass'n.*

### B. Material Alteration

 The court further finds that D.H. has achieved a material alteration in the legal relationship between himself and the Board in that he has obtained an enforceable order that enables him to receive services, modifications and supplements not previously made available to him by the Board. That the parties resolved the issues through a stipulated resolution rather than through adjudication does not preclude the plaintiff from claiming attorney's fees as a prevailing party

ing party eligible for attorney's fees because the relief was not obtained as a direct result of the hearing, but rather as a result of the district's ongoing evaluation of the student's educational needs. However, the Board's reliance on *Patricia E.* is misplaced given the factual record in the instant action. In the case at bar, D.H. received modifications and adaptations to his IEP as a direct result of his proceeding with a hearing; the record clearly demonstrates that this relief was not part of the Board's ongoing pre-hearing evaluation of D.H.'s needs as was the plaintiff's situation in *Patricia E.* The court in *Patricia E.*, in a fact-intensive determination, recognized that the school board had at all times acted promptly and in a timely fashion to meet the educational needs of the student. In contrast, the record of the instant action makes clear that the Board did not act promptly to meet D.H.'s educational needs. Rather, the facts detail a historic failure on the part of the Board to provide services over an extended evaluative process. Given the marked factual disparities, the court finds reliance on *Patricia E.* misplaced.

**3.** The court notes the Board's suggestion that it would have acted on the provisions of the ultimate order in the course of the evaluative pro-

cess. However, nowhere in its memorandum has the defendant substantiated that it would have provided the necessary services. The Board's suggestion of this "possibility" does not satisfy the Board's burden of demonstrating, on the basis of the record and specific facts, that genuine issues of fact exist to be tried. "Justice could almost always be delayed, if not perverted, if parties are allowed to avoid summary judgment by alleging possibilities instead of facts." *Leslie Fay, Inc. v. Rich*, 478 F.Supp. 1109, 1114 (S.D.N.Y.1979). Because the plaintiff has presented significant evidence on the basis of which the court could find that the Board would not have voluntarily taken action during the course of the evaluative process, and the Board has presented only one affidavit suggesting the "possibility" of the opposite, the Board's argument is insufficient to preclude summary judgment for the plaintiff on this ground. *See Dusanenko v. Maloney*, 726 F.2d 82, 84 (2d Cir.1984) (where party moving for summary judgment has met its burden, opposing party must submit affidavits or other evidence to controvert material facts set forth by the moving party).

under IDEA. *Barlow–Gresham Union High Sch. Dist. No. 2 v. Mitchell,* 940 F.2d 1280, 1284 (9th Cir.1991); *Barbara R. v. Tirozzi,* 665 F.Supp. 141, 145 (D.Conn.1987). " '[F]or purposes of the award of counsel fees, parties may be considered to have prevailed when they vindicated rights through a consent judgment or without formally obtaining relief.' " *Maher v. Gagne,* 448 U.S. 122, 129, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980) (quoting S.Rep. No. 94–1011, at 5 (1976), reprinted in U.S.C.C.A.N. 5908, 5912 (discussing 42 U.S.C. § 1988)).

Thus the second factor set forth in *Texas State Teachers*—that the relief obtained materially alter the parties' legal relationship—is also satisfied.

### C. Nature of Relief

■ Finally, D.H. has also satisfied the third *Texas State Teachers Ass'n* factor in that the relief he obtained is neither technical nor de minimis. The placement and services that the plaintiff now enjoys as a result of the Hearing Officer's Order are significantly different than that which the Board had previously recommended and implemented. For example, as a result of the modifications and adaptations to his program, D.H. has: (1) participated in the "Let's Read" program; (2) benefitted from modifications to his teachers' instructional techniques; (3) received individualized instruction in problem subject areas; and (4) received a tutor in place of generic teaching aides. Therefore, the relief the plaintiff obtained clearly is not de minimis.

■ In summary, the court finds that the plaintiff is a "prevailing party" because: (1) his use of procedural protections afforded by the IDEA led directly to his achieving the relief he was seeking on a significant claim in the litigation; (2) that relief effected a material alteration in his legal relationship with the Board; and (3) the alteration is not merely technical or de minimis in nature.

### II. Attorney's Fees and Costs

■ Once a plaintiff meets the prevailing party threshold, "it remains for the district court to determine what fee is 'reasonable.' " *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Although "the degree of the plaintiff's success is not determinative of eligibility for attorney's fees, it is relevant to the size of the award. Other than a guidepost, however, the district court has broad discretion in setting a reasonable fee." *Chagnon v. Town of Shrewsbury,* 901 F.Supp. 32, 35 (D.Mass.1995). If a plaintiff achieves only partial or limited success, the district court may attempt to identify specific hours that should be eliminated or it may simply reduce the award to account for the limited success. "The court necessarily has discretion in making this equitable judgment." *Hensley,* 461 U.S. at 437.

In the instant case, the plaintiff seeks attorney's fees and costs in the amount of $15,029.30 which sum represents his attorney's total expenditure in this matter.[4] The Board maintains that the plaintiff is not entitled to the requested fees for the following reasons: (1) the content of the Hearing Officer's Order was substantially the same as an offer of settlement made by the defendant prior to the Hearing; and (2) any discussion of a fee award is premature because the plaintiff is not a prevailing party. Neither argument proves availing.

■ First, the Board argues that the plaintiff is barred from receiving attorney's fees under 20 U.S.C. § 1415(e)(4)(D). Section 1415(e)(4)(D) provides that a plaintiff will not be awarded attorney fees where he has rejected a written offer of settlement and the administrative officer or court finds that the relief finally obtained is not more favorable to the plaintiff than the offer of settlement. The Board's reliance on § 1415(e)(4)(D) is misplaced given the factual record in the instant action.

The Board asks this court to find that the negotiations between the representatives of

---

4. Plaintiff's documented monetary figure includes: (1) 39.4 hours spent by Attorney Shaw on this case at $250.00 per hour; (2) 23.6 hours spent by Attorney Roznoy on this case at $150.00 per hour; (3) 7.3 hours spent by Attorney Fausey on this case at $125.00 per hour; and (4) $727.30 in costs for work and expenditures of plaintiff's counsel through June 6, 1997.

the school system and the plaintiff which resulted in a resolution of the issues constitute the equivalent of a "written offer" that the plaintiff rejected at the May 10, 1996 prehearing conference. Contrary to the defendant's contention, the record demonstrates that the stipulation presented at the prehearing conference was a result of meetings and negotiations between the parties, not a written offer by the defendant handed to the plaintiff. To represent that the stipulation was an "offer" made by one of the parties is a distortion of the facts of this case.

■ Based on the foregoing, the court finds that the resolution was not a written offer, and as such, § 1415(e)(4)(D) does not apply.[5]

The Board's second argument in opposition to the award of attorney's fees—that a discussion of attorney's fees is premature because the plaintiff is not a prevailing party— is moot given the foregoing discussion of the plaintiff's prevailing party status.

Based on the record before the court and the high degree of success achieved by the plaintiff, the court finds that the plaintiff is entitled to all requested attorney's fees and costs. The requested hourly rate of $250.00 for attorney David Shaw is reasonable for an attorney in the relevant community with his skill and experience. *See C.G. v. New Haven Bd. of Educ.*, 988 F.Supp. 60 (D.Conn.1997) (Judge Martinez awarded Attorney Shaw hourly rate of $250.00). Furthermore, based on the affidavits of Attorney John C. Yavis, Attorney David C. Shaw and Attorney Richard T. Roznoy, the hourly rates of $125.00 for Attorney Joy Fausey and $150.00 for Attorney Richard T. Roznoy are also reasonable.[6]

Therefore, the plaintiff is entitled to requested attorney's fees and costs in the amount of $15,029.30.

### III. Motion for Attorney's Fees For Time Spent After June 6, 1997

On August 15, 1997, the plaintiff moved for an additional award of $4,604.20 in attorney's fees and costs for work performed on this case by the plaintiff's attorneys after June 6, 1997, and for work performed by Attorney Shaw prior to June 6, 1997, which was not previously documented. The updated accounting indicates an additional 5.2 hours spent on this case by Attorney Shaw at the rate of $250.00 per hour, and an additional 20.6 hours spent by Attorney Roznoy at the prevailing market rate of $150.00 per hour, resulting in additional costs incurred of $214.20. The defendant did not file papers in opposition to this most recent motion.

■ A plaintiff's recovery of attorneys' fees for work done in connection with the fee application is appropriate. *Gagne v. Maher*, 594 F.2d 336, 343 (2d Cir.1979), *aff'd*, 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980). Therefore, based on the foregoing analysis of the plaintiff's initial claim for attorney's fees, the plaintiff's motion for attorney's fees for time spent after June 6, 1997, and for time not previously recorded should also be granted.

### CONCLUSION

For the aforementioned reasons, the plaintiff's motions for summary judgment [doc.

---

5. Even if the court were to find the stipulation to be a written offer in accord with the relevant statutory language, § 1415(e)(4)(D) still would not apply. Section 1415(e)(4)(D)(iii) states that for attorney's fees to be barred, not only must there be a written offer, but the court must also find that the relief finally obtained was not more favorable to the plaintiff than any written settlement offer. Examining the facts and equities in the instant action, the court cannot make such a finding.

The administrative hearing resulted in the entry of an Order with enforceable obligations on the part of the Board. The effect of an enforceable order makes the relief finally obtained much more favorable than the alleged written settlement offer. The record demonstrates that the

plaintiff wanted and needed an order. As previously discussed, the record demonstrates a long history of the plaintiff's distrust of the Board. The plaintiff felt he could no longer rely on the unfounded statements of the Board, and he wanted an order by the hearing officer to enforce the terms of an adequate educational program. Given the parties' history, the plaintiff's lawyer made clear that anything less than an order would be unacceptable. Accordingly, even if the court were to have found that there was a written settlement offer, the relief finally obtained was more favorable to the plaintiff than that offer. As such, § 1415(e)(4)(D) would not apply.

6. The defendant does not contest plaintiff's documented rates.

# 21] and for additional fees and costs for time spent on the case [doc # 33] should be GRANTED and the defendant's motion for summary judgment [doc # 24] should be DENIED. The plaintiff should be awarded a total of $19,633.50 in attorney's fees and costs.

Either party may seek review of this report and recommendation as provided in 28 U.S.C. § 636(b) (written objections to recommended ruling must be filed within ten days of service of the same); Fed.R.Civ.P. (6)(a), (6)(e), & 72; and Rule 2 of Local Rules for United State Magistrate Judges (D.Conn.). **Failure to object in a timely manner may preclude further review.** *Small v. Secretary of Health and Human Servs.,* 892 F.2d 15, 16 (2d Cir.1989).

March 10, 1998.