**E.S., by his parents and next friend, Mr. and Mrs. S., Plaintiff,**

**v.**

**ASHFORD BD. OF EDUC., et al., Defendants.**

**Civ. No. 397CV620 (PCD).**

United States District Court, D. Connecticut.

March 15, 2001.

Winona Wellman Zimberlin, Hartford, CT, for E.S., by his parents & next friend Mr. & Mrs. S.

Seth R. Klein, Attorney General's Office, Linsley J. Barbato, Attorney General's Office, Hartford, James G. Williams, Robert J. Flanagan, Jr., Cella, McKeon & Williams, North Haven, CT, for Board of Education, Theodore S. Sergi.

## RULING ON PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS

DORSEY, Senior District Judge.

Plaintiff moves for attorneys' fees and costs. (Dkt. No. 99.) The motion is granted in part.

## I. JURISDICTION

This court has subject matter jurisdiction pursuant to 20 U.S.C. § 1415(e)(4)(A) (1997) and 28 U.S.C. § 1331.

## II. BACKGROUND

### A. Factual Background

In October 1993, the State Board of Education and Theodore S. Sergi, Commissioner of the State Department of Education, (collectively "State Defendants") held a meeting to discuss the current operation of the state's special education due process hearing system. (Dkt. No. 104, Aff. of Theresa DeFrancis ¶ 6.) State Defendants invited attorneys who practiced in special education law. (*Id.*) In February 1994, State Defendants prepared an internal study of the special education due process hearing system, including comments from the special education bar and state

hearing officers. (*Id.* ¶ 7.) The study recommended a new system design. (*Id.*) In response to the prompting of State Defendants and others to deal with some of these concerns, the Connecticut legislature adopted changes to the special education statutes in 1994, 1995, and 1996. (*Id.* ¶ 8.)

During 1997, E.S. was a thirteen-year-old eighth-grader at Ashford School, Ashford, Connecticut ("Ashford"). (Dkt. No. 100 at 1.) Due to academic difficulties in school, his parents requested that he be evaluated for special education services. (*Id.*) Ashford referred him to a Planning and Placement Team meeting for consideration for special needs. (*Id.*) Ashford started to evaluate him but then suspended him and scheduled an expulsion hearing. (*Id.*) Ashford refused to complete the special education evaluation prior to the expulsion hearing. (*Id.*) E.S. filed for a special education due process hearing on January 29, 1997, the same day as but prior to the expulsion hearing. (*Id.*) Ashford expelled E.S. and, despite a request from Plaintiff, did not return E.S. to school under a "stay put" provision. (*Id.* at 1–2); *see* 20 U.S.C. § 1415(e)(3) (1997); 34 C.F.R. § 300.514(a).

State Defendants appointed a hearing officer to conduct the special education due process hearing. (Dkt. No. 100 at 2.) E.S. requested that the hearing officer enforce his right to "stay put" and so return him to school while his hearing was pending. (*Id.*) At first, the hearing officer ruled that the "stay put" placement of a student on suspension was suspension and so declined to return E.S. to Ashford. (*Id.*)

E.S. requested that the hearings be concluded with 45 days as required by law. (*Id.*); *see* 34 C.F.R. § 300.511(a); CONN. GEN. STAT. § 10–76h(b); *Barbara R. v. Tirozzi*, 2:83cv991 (PCD), Consent Decree

(D.Conn. Sept. 10, 1985). When the initial hearing date was canceled and enough new hearing dates were not scheduled, Plaintiff initiated the present lawsuit.[1] (Dkt. No. 100 at 3–4.) While some of the claims were against Ashford only, the complaint also alleged that State Defendants were responsible for ensuring that the hearings were conducted in compliance with the law, that State Defendants had not ensured that the hearings were conducted in compliance with the law since it was not within 45 days, that State Defendants had a custom, policy, or procedure which prevents hearings from being conducted in a timely manner, and that State Defendants failed to properly enforce the "stay put" provision. (Dkt. No. 104 at 2–3; *see* Dkt. No. 1; Dkt. No. 100 at 4.)

The hearing officer subsequently ruled on May 21, 1997, in contrast to his previous ruling, that the Ashford principal erred in not evaluating E.S. in a timely manner and that E.S. was entitled to be placed back at Ashford and so ordered his immediate return. (Dkt. No. 100 at 5.) E.S. returned to school the next day, over four months after being suspended. (*Id.*)

On September 5, 1997, the parties entered into settlement discussions. (*Id.*); *see* FED. R. CIV. P. 36 (requests for admissions). Plaintiff proposed to submit draft regulations that addressed his concerns over the timeliness of special education due process hearings. (Dkt. No. 100 at 5–6.) State Defendants agreed to consider Plaintiff's draft language as part of the proposed new regulations to be presented to the State. (*Id.* at 6.) Discovery in the case nonetheless continued. (*Id.* at 6–7.)

In February 1998, State Defendants initiated a thorough review of special education in Connecticut. (Dkt. No. 104, Aff.

---

1. Plaintiff asserts that he filed the present lawsuit in response to no hearing dates being scheduled during the entire month of April, (Dkt. No. 100 at 3.) His assertion is undercut by the fact that the complaint was filed on April 3, 1997. (*See* Dkt. No. 1.)

of Theresa DeFrancis ¶ 11.) The review included a survey sent to, among others, the special education bar. (*Id.*)

On August 17, 1998,[2] this court ruled on State Defendants' motion to dismiss. (Dkt. No. 100 at 7; Dkt. No. 104 at 4; *see* Dkt. No. 37; Dkt. No. 64.) All counts were dismissed against State Defendants except Count Three. (*See* Dkt. No. 64.) This court held that State Defendants were responsible for procedural compliance with the Individual with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.*, including the right to "stay put" and that the "stay put" placement of a child under suspension was the previous placement, not suspension. (Dkt. No. 100 at 7; *see* Dkt. No. 64 at 4–7.)

Settlement negotiations continued. (Dkt. No. 100 at 7.) Plaintiff prepared proposals. (*Id.*) State Defendants drafted proposed regulations on October 6, 1999. (*Id.*; Dkt. No. 104, Aff. of Theresa De-Francis ¶ 14.) A copy was sent to the special education bar, including Plaintiff's counsel, soliciting their comments. (Dkt. No. 104, Aff. of Theresa DeFrancis ¶ 15.) Plaintiff prepared written comments about the proposed regulations. (Dkt. No. 100 at 7.)

Judgment entered on October 20, 1999, dismissing the case. (Dkt. No. 98.) At the time of dismissal, Count Three of the amended complaint was still pending.[3] (Dkt. No. 104 at 4.)

On November 9, 1999, State Defendants held a public hearing on the proposed regulations and heard from three attorneys, including Plaintiff's counsel, who represented parents before the State. (Dkt. No. 104, Aff. of Theresa DeFrancis ¶¶ 16–17.) State Defendants received thirteen sets of written comments regarding the proposed regulations, including one set from Plaintiff's counsel. (*Id.* ¶ 18(1st).) State Defendants reviewed the written comments and made revisions to incorporate many of the changes. (*Id.* ¶ 18(2nd).) While Plaintiff's counsel's comments were considered, State Defendants now assert that her comments received no more weight than those by others. (*Id.* ¶ 21.) After the notice and comment period, the regulations became final on March 23, 2000. (Dkt. No. 100 at 8; Dkt. No. 104, Aff. of Theresa DeFrancis ¶¶ 19–20.) The regulations substantially addressed the issues raised in the present lawsuit, such as the timeliness of special education due process hearings, expedited hearings for cases involving the discipline of disabled children, and that the "stay put" placement of a child is the then current placement. (Dkt. No. 100 at 8; Dkt. No. 104 at 8.) Plaintiff now asserts that if the regulations had been previously in place and had been followed, the present lawsuit would not need to have been filed. (Dkt. No. 100 at 8.)

## B. Procedural History

Plaintiff now files his motion for attorneys' fees and costs. (Dkt. No. 99.) They also submit a memorandum of law, (Dkt. No. 100), and a statement of undisputed facts, (Dkt. No. 101). State Defendants file a memorandum in opposition. (Dkt.

---

**2.** Plaintiff miscites the date of the ruling as August 6, 1997. (Dkt. No. 100 at 7.) The ruling was dated August 6, 1998. (*See* Dkt. No. 64.) It was filed August 17, 1998.

**3.** Count Three provided,

The failure of [S]tate [D]efendants to provide a due process hearing decision within 45 days of the hearing request while failing to enforce E.S.'s right to "Stay Put" during the pendency of the administrative proceedings is a violation of IDEA, § 504 of the Rehabilitation Act of 1973, CONN. GEN. STAT. 10–76a *et seq.*, and the order of this court in *Barbara R. v. Tirozzi*, 665 F.Supp. 141 (D.Conn.1987).

(Dkt. No. 45 ¶ 43(3rd).)

No. 104.) Plaintiff files a reply memorandum. (Dkt. No. 105.) State Defendants then file a sur-reply memorandum, (Dkt. No. 106), and a statement of undisputed facts, (Dkt. No. 107).

## III. DISCUSSION

### A. Standard for Prevailing Party Status

■ In order to be entitled to fees, a plaintiff has the burden to cross the statutory threshold and show he is a prevailing party. *See* 20 U.S.C. § 1415(e)(4)(B) (1997). To be considered a prevailing party, a plaintiff must show (1) that he obtained relief on a significant claim in litigation; (2) that he effected a material alteration in the parties' legal relationship; and (3) that the alteration was not merely technical or *de minimus* in nature. *See Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791–92, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989). Although *Texas State Teachers Association*, 489 U.S. 782, 109 S.Ct. 1486, discussed fee-shifting under 42 U.S.C. § 1988, the same standard has been applied to attorneys' fee cases under the IDEA. *See, e.g., Angela L. v. Pasadena Indep. Sch. Dist.*, 918 F.2d 1188, 1193–94 (5th Cir.1990) (discussing the HCPA, now the IDEA). The standard for determining prevailing party status is generous. *See G.M. v. New Britain Bd. of Educ.*, 173 F.3d 77, 83 (2d Cir.1999); *D.H. v. Ashford Bd. of Educ.*, 1 F.Supp.2d 154, 159 (D.Conn.1998).

■ A plaintiff need not prove all asserted claims; a mixed result does not preclude fee eligibility so long as all claims relate to a common core of facts or related legal theories. *See Hensley v. Eckerhart*, 461 U.S. 424, 435, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). A "plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant." *Tex. State Teachers Ass'n*, 489 U.S. at 792, 109 S.Ct. 1486. Settlement can change the legal relationship between the parties sufficiently. *See Maher v. Gagne*, 448 U.S. 122, 129, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980).

■ A plaintiff can also prevail if he can show that he was a catalytic factor in the ultimate result. *See Marbley v. Bane*, 57 F.3d 224, 233–34 (2d Cir.1995); *Heldman v. Sobol*, 846 F.Supp. 285, 288 (S.D.N.Y. 1994); *but see S–1 and S–2 v. State Bd. of Educ.*, 21 F.3d 49, 51 (4th Cir.1994) (rejecting catalytic theory). "A plaintiff whose lawsuit has been the catalyst in bringing about a goal sought in litigation, by threat of victory (and not by dint of nuisance and threat of expense), has prevailed." *Marbley*, 57 F.3d at 234–35. While a district court should consider the strength of a plaintiff's claim in gauging its catalytic effect, it need not resolve the merits. *See id.* at 235. A court may infer a causal connection between a lawsuit and the result if the facts reveal that the defendants only began to provide relief when threatened with legal action. *See Armster v. U.S. Dist. Court*, 817 F.2d 480, 481–82 (9th Cir.1987); *Doucet v. Chilton County Bd. of Educ.*, 65 F.Supp.2d 1249 (M.D.Ala. 1999).

### B. Plaintiff is a Prevailing Party

■ Plaintiff alleged that State Defendants neglected its legal responsibilities when it failed to enforce his right to "stay put" and to monitor the timeliness of his due process hearing.[4] (Dkt. No. 100 at 14.) Plaintiff gained a legal determination from this court, contested at the time, that

---

4. State Defendants argue that Plaintiff never received a favorable ruling to this effect. (Dkt. No. 104 at 10.) While true, it is true only because Plaintiff agreed to settle rather than pursue the case to a judgment on the merits.

the hearing officer erroneously ruled that a "stay put" placement of a child on suspension was suspension. (Dkt. No. 64 at 5–6.) This error was determined to have violated his procedural rights, not his substantive rights, and so would legally flow against State Defendants, not against Ashford. (*Id.* at 6–7.)

The new regulations addressed the monitoring of the timeliness of due process hearings. Plaintiff directly participated in the formation of the new regulations by reason of his role in the present suit. State Defendants agree that his counsel's comments were considered and resulted in changes to the proposed regulations.

To all this, State Defendants respond that the process of amending the regulations began long before the present lawsuit. An affidavit by a state employee asserts that the process began in 1993. (Dkt. No. 104, Aff. of Theresa DeFrancis ¶ 22.) They also argue that Plaintiff's counsel did not participate any more in the regulatory process nor in a significantly different way than did other members of the special education bar. Indeed, they conclusorily assert that drafting, amending, and promulgation of the regulations had nothing to do with the present lawsuit. (*Id.*)

Whether Plaintiff's lawsuit is causally related to the new regulations is not crystal clear. The present lawsuit was filed before the regulations were drafted; Plaintiff bargained to participate in the drafting of and commenting on the new regulations; Plaintiff's counsel participated in the drafting of and commenting on the new regulations; the regulations became final about five months after this court dismissed the lawsuit because of the settlement agreement. The inquiry is whether from this Plaintiff merits an inference of cause and effect.

It is concluded he does. First, Plaintiff's claim was followed by a substantial effort at modifying the regulations. He prompted the adjudication of his claim to a positive stance on the issue of an erroneous "stay put" placement, which would have been a procedural violation against State Defendants.

Second, a portion of the new regulations directly addressed the issue of expedited hearings for cases involving discipline of disabled children. This constituted a particularly apt regulatory response to the facts of the present lawsuit.

Third, the asserted facts in State Defendants' affidavit paint a different story from that for which State Defendants argue. In 1993, State Defendants began consulting the special education bar about possible changes to the special education due process system. Changes to the Connecticut special education statutes were adopted in 1994, 1995, and 1996. Thereafter, no further review of regulatory procedures occurred before the present lawsuit began in 1997.

Fourth, there is no showing that the regulations finalized on March 23, 2000 would have been adopted apart from the present lawsuit. Even if the process of adopting the 2000 regulations began in 1993, except for the legislative acts in 1994, 1995, and 1996, the process might well have remained in limbo. That it was only after the present lawsuit began that the amendment process seems to have resumed prompts the inference that the present lawsuit was a factor in the resumption which led to the regulations finalization in 2000. This is more likely when the record shows no other instigating factor preclusive of the inference.

For these reasons, Plaintiff's argument that he was at least in part a catalyst for the new regulations is sustained. As the Second Circuit held in *Marbley*,

[a] lawsuit sometimes produces voluntary action by the defendant that affords

the plaintiff all or some of the relief he sought through a judgment—e.g., a monetary settlement or *a change in the conduct that redresses the plaintiff's grievances.* When that occurs, the plaintiff is deemed to have prevailed despite the absence of a formal judgment in his favor.

57 F.3d at 233–34 (quoting *Hewitt v. Helms,* 482 U.S. 755, 760–61, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987)) (emphasis added). A causal connection between the present lawsuit and the new regulations is found since State Defendants began a process of providing relief when threatened with legal action. Because he was a catalytic factor in causing the 2000 regulations to be promulgated, Plaintiff is a prevailing party.

## C. Standard for Calculation of Fee Awards

The amount of a fee award is a different question from the eligibility. *See Farrar v. Hobby,* 506 U.S. 103, 114, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992). As the language of the statute provides, the award must be reasonable. *See* 20 U.S.C. § 1415(e)(4)(B) (1997); *see also Hensley,* 461 U.S. at 433, 103 S.Ct. 1933. " '[T]he most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.' " *Farrar,* 506 U.S. at 114, 113 S.Ct. 566 (quoting *Hensley,* 461 U.S. at 436, 103 S.Ct. 1933). A "district court has wide discretion in determining the amount of attorneys' fees to award; thus, absent an abuse of discretion or an error of law ... the district court's assessment of the appropriate fee award" will not be disturbed. *Grant v. Martinez,* 973 F.2d 96, 99 (2d Cir.1992).

■ Reasonableness in the amount awarded is measured in the success from the work performed. When a plaintiff obtains excellent results in litigation, calculation of fee awards generally follow the lodestar method, in which a court looks to

the reasonable hours necessary for appropriate representation multiplied by a reasonable hourly rate. *Id.* Other considerations may prompt upward or downward adjustments to the lodestar figure. *See Angela L.,* 918 F.2d at 1197. When a plaintiff has merely obtained limited success, the lodestar method is not necessarily followed. *Hensley,* 461 U.S. at 436, 103 S.Ct. 1933 ("if ... a plaintiff has achieved only partial or limited success, the [lodestar method] may be an excessive amount"); *see, e.g., Farrar,* 506 U.S. at 115, 113 S.Ct. 566 (no fees for prevailing plaintiff); *Myree v. Local 41, Int'l Bhd. of Elec. Workers,* 847 F.Supp. 1059, 1069 (W.D.N.Y.) (fee award reduced by 75% due to limited success), *aff'd* 29 F.3d 620 (1994).

## D. Amount of Award

### 1. Hourly Rate

Plaintiff argues that two hundred dollars per hour is reasonable. He puts forward affidavits to support that this reflects a currently appropriate rate. State Defendants offer no objection. Accordingly, this court accepts the hourly rate of two hundred dollars.

### 2. Number of Hours

Plaintiff asserts that 259.76 hours have been expended in the matter. (Dkt. No. 100 at 37.) State Defendants challenge 68.45 of those hours. State Defendants challenge the hours allotted to Plaintiff's motion for preliminary injunction. This court agrees. The preliminary injunction was against Ashford only, not State Defendants, to get E.S. back into school under a "stay put" provision. 9.0 hours are not allowed.

■ State Defendants challenge the hours allotted to Plaintiff's motion for contempt against State Defendants for the

alleged violation of the Consent Decree of *Barbara R. v. Tirozzi.* Merely because the motion did not prevail is not reason to disallow the hours unless the motion was wholly frivolous or necessary. State Defendants do not assert that it was wholly frivolous or unnecessary. The hours are reasonable.

 State Defendants challenge time allotted to legal work research in bringing a § 1983 claim against them, as Plaintiff's counsel should have known that the Eleventh Amendment bars such suits against them. Exploration of avoidance of a defense, not eventually raised, cannot be said to have advanced a claim. These 4.2 hours are not allowed.

State Defendants challenge fifty percent of the hours allotted to the drafting and filing of the complaints since Ashford was also a co-defendant. Much of the complaint, including almost all the facts and most of the legal theories, would have remained the same had the present suit been brought against State Defendants only. Nonetheless, of the 23.2 hours attributed to the complaint (which does not include the § 1983 research), some portion would not have been done had Ashford not been a co-defendant. Only 19.1 hours are allowed.

State Defendants challenge assorted other time which they attribute to work against Ashford, not them. 4.85 of these hours are not allowed.

Plaintiff is therefore entitled to the balance, or 237.61 hours.

#### 3. *Reduction for Limited Success*

 Plaintiff is not entitled to the full lodestar figure as he has not achieved excellent results. The results obtained, participation in the drafting of new regulations and their substance as affected by the issues herein, are meaningful and enforceable and hence are enough to entitle him to prevailing party status. Yet the results obtained lack the same weight as would a settlement for damages or a consent decree. Plaintiff may have influenced but certainly did not dictate the final regulations. Furthermore, Plaintiff's settlement seems not to have reserved the right to renew his lawsuit should the ultimate regulations have proved unsatisfactory. Accordingly, the total amount to which Plaintiff is entitled is further reduced by fifty percent.

### IV. CONCLUSION

Plaintiff's motion for attorneys' fees and costs (Dkt. No. 99) is granted in the amount of $23,761.00.