J.C., by his parents and next friend, Mr. & Mrs. C., Plaintiff,

v.

REGIONAL SCHOOL DISTRICT NO. 10, Defendant.

No. 3:99CV0873 (GLG).

United States District Court, D. Connecticut.

Sept. 28, 2000.

### Opinion

GOETTEL, District Judge.

Plaintiff J.C., by his parents and next friends, Mr. and Mrs. C., brought this action against Defendant Regional School District No. 10, ·pursuant to section 615(i)(3)(B) of the Individuals with Disabilities Education Act ("IDEA" or "the Act"), 20 U.S.C. § 1415(i)(3)(B), and section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794a, seeking an· award of attorneys' fees and costs as the "prevailing party" at an administrative "due process" hearing. The Court heard oral argument on the parties' cross-motions for summary judgment on June 13, 2000. For the following reasons, we GRANT Plaintiff's motion [Doc. # 13] and DENY Defendant's motion [Doc. # 16].

### STANDARD OF REVIEW

A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." *Miner v. City of Glens Falls*, 999 F.2d 655, 661 (2d Cir.1993) (quoting Fed. R.Civ.P. 56(c)). The parties agree that summary judgment is appropriate in this case because there are no genuine issues as to any material fact.

### BACKGROUND

Based on the submissions of the parties the Court finds the following facts. J.C. was a tenth-grader during the 1998–99 school year attending Lewis Mills High School in the Defendant Regional School District No. 10, in which he has been enrolled since kindergarten. Defendant Region No. 10 is the local educational agency established by the laws of the State of Connecticut and charged with the responsibility of providing a free appropriate public education, including special education services if needed, to disabled children residing within its district.

Prior to the fall of J.C.'s seventh grade year, in August of 1995, Mrs. C. had requested that the Defendant evaluate J.C. for a suspected disability, however, no evaluation took place that year or the next. Mrs. C. again requested evaluation for special education needs in the fall of 1997 when J.C. was entering the ninth grade. Upon that second request, the Defendant convened a planning and placement team ("PPT")[1] pursuant to the procedural requirements of Connecticut's special education statutes, *see* Conn. Gen.Stat. § 10–76h(a)(1), and conducted psychological and educational evaluations. On the basis of those evaluations, the PPT concluded on December 3, 1997 that J.C. did not qualify for special education pursuant to IDEA, and they declined to write an individualized education program ("IEP") for J.C. *See* 20 U.S.C. § 1414(d)(1)(A). The parents, who were not represented by counsel at that time, did not file a request for a due process hearing to contest the decision of the PPT.

In October of 1998, J.C. was suspended from school for vandalizing a seat on his school bus with a sharp instrument, allegedly a tool of some sort brought onto the bus by another student for use in shop class. Mr. and Mrs. C. were informed by

---

**1.** The IDEA uses the term "IEP (individualized education program) Team." 20 U.S.C. § 1414(d)(1)(A). For the purposes of this ruling, we shall refer to the team as a "PPT."

letter dated November 5, 1998 that an expulsion hearing would be held on November 12, 1998. Due to the Defendant's view that the sharp instrument was a weapon, the possible consequence of the incident was expulsion for 180 days.

Not surprisingly, on November 11, 1998, the parents retained counsel and filed a request for a special education due process hearing with the Due Process Unit at the State Department of Education contesting the outcome of the prior year's PPT (within the two-year time limit for filing such a request, *see* Conn. Gen.Stat. § 10–76h(a)(3)). The parents requested that the Defendant return J.C. to school, convene another PPT, fund an independent evaluation, determine J.C. to be eligible for special education or accommodations pursuant to section 504 of the Rehabilitation Act of 1973, and provide compensatory education. The parents also invoked IDEA's "stay put" provision, which requires that a child's current educational placement be maintained pending the outcome of a due process hearing.

In response to the parents' request, the Defendant cancelled the expulsion hearing and scheduled a PPT for November 19, 1998. At or shortly after that PPT, the Defendant agreed to keep J.C. in school and to fund an independent neuro-psychological evaluation with an evaluator of the parents' choice. The evaluation was conducted in early December of 1998 by a licensed psychologist, who concluded that J.C. showed indications of attention deficit hyperactivity disorder ("ADHD"), primarily impulsive-type, mild neuro-psychological dysfunction, and mild learning disability. The evaluator recommended additional academic support in school.

Another PPT took place on January 25, 1999 to discuss the results of the evaluation. At that PPT, the Defendant found J.C. eligible for special education as "other

**2.** Because the parties have not briefed Plaintiff's Rehabilitation Act claim, we do not consider that claim but decide the issues solely under the IDEA.

health impaired." *See* 20 U.S.C. § 1401(3)(A)(I). The Defendant agreed that the incident of vandalism was a manifestation of J.C.'s disability, and wrote an IEP providing special education for J.C.

Plaintiff notified the hearing officer shortly thereafter that the dispute had been settled. The hearing officer dismissed the hearing on April 13, 1999, noting in his final decision and order that the issues had been resolved by the parties. Plaintiff demanded reimbursement of attorney's fees of $5,285.00 on April 16, 1999, claiming that he was the prevailing party because the school board provided the relief he sought after he requested a due process hearing. Defendant refused to pay the fees, arguing that Plaintiff was not a prevailing party since Defendant provided the educational services Plaintiff sought, not as a result of the legal action, but rather as a result of Plaintiff's request that a PPT be convened in order to reassess his educational needs and to determine his eligibility for special education. Plaintiff filed this action on May 11, 1999.

### *DISCUSSION*

The issues before the Court are: (1) whether the Plaintiff was the prevailing party in the administrative proceeding, and is therefore eligible for an award of attorney's fees and costs under IDEA;[2] and (2) if so, the amount of attorney's fees that should be awarded.

### *I. Prevailing Party Status*

The IDEA ensures "all children with disabilities ... a free appropriate public education that emphasizes special education and related services designed to meet their unique needs." 20 U.S.C. § 1400(d)(1)(A). Courts have discretion to award attorney's fees and costs to parents who prevail in actions or proceedings brought under the Act to enforce their child's rights.[3]

**3.** The relevant subsection of the IDEA states: "In any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorney's fees as part of the costs to the parents of a child with a

■ "[P]laintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit." *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 789, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989). In making this determination, a court must consider whether the plaintiff: (1) obtained relief on a significant claim in the litigation; (2) whether the relief materially altered the parties' legal relationship; and (3) whether the relief is more than de minimis in nature. *Id.* at 791–92, 109 S.Ct. 1486.

■ "The most critical factor in determining prevailing party status is the degree of success obtained." *Id.* at 789, 109 S.Ct. 1486. In making this determination, courts compare "the relief sought by the plaintiff with the relief obtained as a result of the suit." *G.M. v. New Britain Bd. of Educ.*, 173 F.3d 77, 81 (2d Cir.1999). In addition, the plaintiff must show a "causal connection" between the "relief obtained and the litigation in which the fees are sought." *Id.* (quoting *Koster v. Perales*, 903 F.2d 131, 135 (2d Cir.1990)). "The fact that the parties resolved their dispute through settlement rather than through full adjudication does not preclude a plaintiff from claiming attorney's fees as a 'prevailing party.'" *Y.O. v. New Britain Bd. of Educ.*, 1 F.Supp.2d 133, 138 (D.Conn. 1998) (citing *Maher v. Gagne*, 448 U.S. 122, 129, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980)); *see also D.H. v. Ashford Bd. of Educ.*, 1 F.Supp.2d 154, 159 (D.Conn.1998). The Second Circuit in *G.M. v. New Britain Bd. of Educ.*, 173 F.3d at 81, adopted the Third Circuit's explanation of the causal connection element, calling it "instructive and particularly relevant in assessing whether a plaintiff has 'prevailed' in a case resolved by settlement." That explanation states:

> Litigation is causally related to the relief obtained if it was a material contributing factor in bringing about the events that resulted in obtaining the desired relief. Litigation can be a material contributing factor if it changed the legal relations of the parties such that defendants were legally compelled to grant relief.

> Alternatively, causation can be established through a "catalyst" theory, where even though the litigation did not result in a favorable judgment, the pressure of the lawsuit was a material contributing factor in bringing about extra-judicial relief.

*Wheeler v. Towanda Area Sch. Dist.*, 950 F.2d 128, 132 (3d Cir.1991) (internal citations omitted); *see also Marbley v. Bane*, 57 F.3d 224, 234 (2d Cir.1995) (noting the continued viability of the "catalyst" theory of recovery of attorneys' fees after *Farrar v. Hobby*, 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992)).

■ Based on the undisputed facts, the Plaintiff is a prevailing party within the meaning of the IDEA. The record is clear that Plaintiff obtained all the relief he sought, *viz.*, reinstatement to his pre-suspension school placement, cancellation of the expulsion hearing, the convening of a PPT, funding of an independent evaluation, the determination of eligibility for special education or accommodations, and the provision of compensatory education. Immediately following Plaintiff's request for an administrative due process hearing, Defendant allowed J.C. to return to school, cancelled the expulsion hearing, and convened a PPT, which agreed to fund the independent evaluation and soon thereafter agreed to identify J.C. as eligible for special education and related services. Accordingly, the PPT wrote and implemented an IEP which entitles J.C. to special educational services. Thus, Plaintiff achieved all his goals.

Nonetheless, Defendant argues that there is no causal connection between the relief provided and the litigation, because it acted because of the parents' request, and not because the parents filed for an

disability who is the prevailing party." 20 U.S.C. § 1415(i)(3)(B).

administrative due process hearing. We are not convinced. "The chronological sequence of events is an important factor in determining whether or not it can be inferred that the defendants guided their actions in response to plaintiffs' lawsuit." *Koppel v. Wien*, 743 F.2d 129, 135 n. 3 (2d Cir.1984) (quoting *United Handicapped Fed'n v. Andre*, 622 F.2d 342, 347 (8th Cir.1980)).

The Defendant provided all the relief Plaintiff requested within days after the parents filed for a due process hearing. Defendant's bare asseverations that it would have provided the relief the parents requested without the necessity of a due process hearing, despite having refused to do so following the parents' requests in 1995 and 1997, strains credulity. Defendant has adduced no evidence to support an inference that it would acted differently this time. It was not until the parents retained counsel and formally requested a due process hearing that the Defendant reconvened the PPT and identified J.C. as eligible for special education. It is clear that the pressure of the lawsuit was a material contributing factor in bringing about the settlement.

Defendant further argues that Plaintiff's due process hearing request was premature because it was brought before there was a cognizable dispute between the parties. Defendant maintains that Mr. and Mrs. C.'s concerns over the impending expulsion hearing should have been addressed at a PPT prior to their filing for a due process hearing. Pursuant to state law, a parent may not raise an issue at a due process hearing that has not first been raised at a PPT. *See* Conn. Gen.Stat. § 10–76h(a)(1). The issues Plaintiff raised in the hearing request centered on Defendant's failure to evaluate and identify J.C. as eligible for special education services, issues which had been raised in the PPT convened in the fall of 1997. Plaintiff also challenged the Board's scheduling the expulsion hearing prior to convening a PPT in contravention of the IDEA's provisions on disciplinary actions involving children with disabilities. *See* 20 U.S.C. § 1415(k)(4). Because the deferral of the expulsion hearing was subsumed within Plaintiff's goal of evaluation and identification for special education purposes, we cannot say that Plaintiff sought to raise an issue that was not first raised at a PPT. Thus, we find that Plaintiff's due process hearing request was not premature.

■ In addition, Defendant argues that it was not required to hold a PPT prior to scheduling the expulsion hearing because Plaintiff was not identified as a child requiring special education at that time. This ignores the provisions in the IDEA which provide protections for children not yet so identified who have engaged in behavior that violated a local educational agency's rules or code of conduct, where the agency knew that the child was a child with a disability before the behavior occurred. 20 U.S.C. § 1415(k)(8)(A). The IDEA charges a local educational agency with knowledge that a child has a disability if:

(I) the parent of the child has expressed concern in writing ... to personnel of the appropriate educational agency that the child is in need of special education and related services;

(ii) the behavior or performance of the child demonstrates the need for such services; [or]

(iii) the parent of the child has requested an evaluation of the child pursuant to section 1414 of this title ....

20 U.S.C. § 1415(k)(8)(B).

The record clearly shows that Mr. and Mrs. C. had expressed concern over J.C.'s poor performance in school and had requested evaluation and special education services in 1995 and 1997. Thus, the Defendant is deemed by the statute to have had knowledge that J.C. was a child with a disability before the vandalism occurred. Plaintiff was therefore entitled to assert the protections that the IDEA provides for special education students facing disciplinary actions for misbehavior linked to their disabilities. One such protection was the

requirement that the Defendant convene a PPT to determine whether Plaintiff's act of vandalism was related to his disability. *See* 20 U.S.C. § 1415(k)(4).

Having found that Plaintiff obtained all the relief he sought as a result of the impending legal action, and that the relief is clearly more than de minimis in nature, we hold that Plaintiff was the prevailing party at the administrative level.

## II. Attorney's Fees and Costs

■ Having concluded that Plaintiff "has crossed the 'statutory threshold' of prevailing party status," *Texas State Teachers Ass'n,* 489 U.S. at 789, 109 S.Ct. 1486, we turn to the determination of the amount of fees and costs. To calculate the attorney's fee award, courts apply the "lodestar" formula by "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *G.M.,* 173 F.3d at 84 (quoting *Blanchard v. Bergeron,* 489 U.S. 87, 94, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989)). We include not only the time spent on the administrative proceeding but also the time expended on this action.

■ Plaintiff demands attorney's fees in the amount of $15,640.00, representing 78.20 hours (through February 1, 2000) at a rate of $200.00 per hour. Plaintiff also demands costs of $200.00. Plaintiff argues that the fee claim should not be reduced pursuant to the IDEA because the Defendant unreasonably protracted the final resolution of the action or proceeding. *See* 20 U.S.C. § 1415(i)(3)(G). We disagree. Defendant provided the requested relief almost immediately after the action commenced. What was prolonged was the fee dispute.

Defendant argues that the amount demanded is excessive and should be reduced to reflect the limited nature of the Plaintiff's "victory." Again, we disagree. As discussed above, Plaintiff's degree of success was complete. We will not reduce the award on that basis.

■ Defendant also argues that the Court should reduce the fee claim by 10.1

hours because the IDEA prohibits reimbursement of legal fees incurred in preparing for and attending PPT meetings. 20 U.S.C. § 1415(i)(3)(D)(ii); *see Fenneman v. Town of Gorham,* 802 F.Supp. 542, 544–46 (D.Me.1992). We agree; however, after a review of the record, we find that the hours expended in preparing for and attending PPT meetings was only 8.5 hours, and therefore, we reduce the fee claim by that amount.

■ Defendant also seeks a reduction in the fee claim to eliminate fees for 4.3 hours incurred prior to the Plaintiff's filing of the due process hearing request. After a review of the record, we decline to reduce the fee claim on that basis, because we find that those hours were expended in preparation for filing the due process hearing request.

Thus, we reduce Plaintiff's fee claim from 78.2 hours to 69.7 hours. Defendant does not dispute the $200 hourly rate claimed by Plaintiff, and we find that rate to be reasonable in light of the current market rates for attorneys of comparable experience and expertise in the special education area. The Court awards Plaintiff attorney's fees in the amount of $13,940.00, and costs in the amount of $200.00, for a total award of $14,140.00.

## CONCLUSION

For the reasons stated herein, the Court GRANTS Plaintiff's motion for summary judgment [Doc. # 13] and DENIES Defendant's cross-motion [Doc. # 16]. The Court awards Plaintiff $13,940.00 in attorney's fees and $200.00 in costs.

SO ORDERED.