**J.C., by his Parents and Next Friend, Mr. and Mrs. C., Plaintiff–Appellee/Cross–Appellant,**

v.

**REGIONAL SCHOOL DISTRICT 10, BOARD OF EDUCATION, Defendant–Appellant/Cross–Appellee.**

**Docket Nos. 00–9484(XAP), 00–9408(LEAD).**

United States Court of Appeals, Second Circuit.

Argued Nov. 8, 2001.

Decided Jan. 24, 2002.

Winona W. Zimberlin, Hartford, CT, for Plaintiff–Appellee/Cross–Appellant J.C. By His Parents and Next Friend, Mr. and Mrs. C.

William R. Connon, Sullivan, Schoen, Campane & Connon, LLC, Hartford, CT, (Mark J. Sommaruga, on the brief), for Defendant–Appellant/Cross–Appellee Regional School District 10, Board of Education.

Arthur A. Smith, Mansfield Center, CT, for Amicus Curiae Education Law Project, Inc.

Bruce A. Goldstein, Bouvier, O'Connor, LLP, Buffalo, NY, for Amicus Curiae Bouvier, O'Connor, LLP.

Before: MINER, STRAUB, and B.D. PARKER, Circuit Judges.

B.D. PARKER, Circuit Judge.

Regional School District 10, Board of Education ("the Board") appeals from a judgment of the United States District Court, District of Connecticut, entered September 28, 2000. The District Court

granted summary judgment and awarded attorneys' fees to J.C. pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. § 1415(i)(3)(B) (1999) ("IDEA" or "the Act"), on the ground that J.C. was a prevailing party under the catalyst theory of recovery, applicable at the time under the law of this and other circuits. *J.C. v. Reg. Sch. Dist. No. 10,* 115 F.Supp.2d 297 (D.Conn.2000).

Following the District Court's decision and the Board's notice of appeal, the Supreme Court decided *Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Resources,* 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001). *Buckhannon* rejected the catalyst theory and interpreted the term "prevailing party" to require a judgment or similar form of judicially sanctioned relief as a predicate for attorneys' fees. Because J.C. obtained no judicially sanctioned relief, we reverse.

## BACKGROUND

The IDEA sets forth detailed administrative procedures to guarantee disabled children an appropriate education. 20 U.S.C. §§ 1400 *et seq.* (1997). To this end, the Act requires that public schools create for each student with a disability a written individualized education program ("IEP") of study best suited to the child's special needs. *Id.* § 1414(d)(2)(A). An IEP is typically prepared by an IEP Team, consisting of parents, teachers, and educational specialists who meet and confer in a relatively informal, collaborative process to determine how best to accommodate the needs of the disabled student. *Id.* § 1414(d)(1)(B). In Connecticut, the IEP Team is known as a planning and placement team ("PPT"). Conn. Agencies Regs. § 10–76a–1(p) (1992).

The IDEA further requires schools to provide an opportunity for parents to present complaints through the IEP process with respect to any matter relating to the identification, evaluation, or educational placement of their child. 20 U.S.C. § 1415(b)(6). Whenever these complaints are not adequately addressed, the IDEA grants parents a right to mediation or to an impartial due process hearing, a more formal process conducted by the appropriate educational agency. *Id.* § 1415(e)(1), (f)(1). If the matter is not resolved satisfactorily during the due process hearing phase, parents then have a right to commence a civil action in federal court or an appropriate state court. *Id.* § 1415(i)(2)(A). In an action brought under 20 U.S.C. § 1415, "the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents of a child with a disability who is the prevailing party." *Id.* § 1415(i)(3)(B). The IDEA qualifies this provision by providing that "[A]ttorneys' fees may not be awarded relating to any meeting of the IEP Team unless such meeting is convened as a result of an administrative proceeding or judicial action." *Id.* § 1415(i)(3)(D)(ii).

J.C. enrolled in Regional School District 10 in the fall of 1988, and in August 1995 his parents requested that the school district evaluate him for possible learning disabilities. The Board did not conduct an evaluation of J.C. at that time, and he was not offered special education. In the fall of 1997, J.C.'s parents again requested an evaluation, and this time, in response to their request, the school convened a PPT meeting at which J.C.'s parents met with teachers and professionals from the school district to assess and plan for J.C.'s educational needs. The PPT observed that J.C.'s grades had been inconsistent and that he had been identified as exhibiting signs of Attention Deficit and Hyperactivity Disorder. The PPT ordered a

psychological assessment but ultimately concluded that J.C. did not require special educational services or accommodations.

J.C. was suspended from school in October 1998 for allegedly vandalizing a school bus, and his parents were notified that an expulsion hearing was scheduled for November 12, 1998. On November 11, 1998, J.C.'s parents, through their attorney, sent a letter to the Board seeking both a PPT and a due process hearing. They also requested that the Board fund an independent evaluation of J.C., determine his eligibility for special education, and permit him to return to school.

The Board responded by cancelling the expulsion hearing and scheduling PPT meetings to address these requests. The PPT convened on November 19, 1998 and agreed to order an independent psychological evaluation of J.C. On November 20, 1998, a pre-hearing conference was held at which the hearing officer postponed the due process hearing until J.C. could be evaluated. J.C. was evaluated on December 9, 1998, and the PPT reconvened on January 25, 1999 to discuss the results. The PPT determined that J.C. suffered from an educational disability and that his actions on the school bus were a manifestation of this disability. The school terminated the expulsion proceedings, and the PPT drafted an IEP that provided for all the other relief requested in the November 11 letter.

Following the PPT's decision, both parties agreed that no issues remained to be determined and jointly requested a hearing for the sole purpose of adopting the PPT's results as an official decision and order. At the hearing on April 13, 1999, however, the Board changed its mind, fearing that transforming the results of the PPT into an official decision would expose the Board to liability for attorneys' fees. The hearing officer declined to adopt the PPT's results as an official order, citing a Connecticut regulation that allows "[a] settlement agreement [to] be read into the record as an agreement between the parties only." Conn. Agencies Regs. § 10–76h–16(d) (2000). The results of the PPT were not read into the record, and the hearing officer issued a final written decision dismissing the hearing as moot.

Following the aborted April 13 hearing, J.C.'s parents sought attorneys' fees from the Board on the ground that J.C. was a prevailing party within the meaning of the IDEA because the PPT had afforded him the relief sought through the due process hearing. When the Board refused this demand, the parents filed suit in district court, seeking attorneys' fees under the IDEA, 20 U.S.C. § 1415(i)(3)(B), and § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794a(b).[1] Both parties moved for summary judgment and, in September 2000, the District Court denied the Board's motion and granted J.C.'s motion, awarding him $13,940 in attorneys' fees and $200 in costs pursuant to the IDEA. The court did not, however, award attorneys' fees for time spent preparing for and attending PPT meetings. J.C. subsequently moved for supplemental fees and the District Court granted his motion. Following the entry of judgment, the Board timely appealed. J.C. then cross-appealed seeking

---

1. Section 504 of the Rehabilitation Act prevents any program or activity that receives federal funding from discriminating against or denying benefits to individuals with disabilities. 29 U.S.C. § 794(a). The statute's fee-shifting provision states that "[i]n any action or proceeding to enforce or charge a violation of a provision of this subchapter, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 29 U.S.C. § 794a(b).

attorneys' fees for preparation for and attendance at the PPT meetings.

## DISCUSSION

■ Generally, this Court reviews a district court's award of attorneys' fees under the IDEA for abuse of discretion. *See G.M. v. New Britain Bd. of Educ.,* 173 F.3d 77, 80 (2d Cir.1999). But where, as here, the challenge is to a district court's interpretation of the fee statute itself, our review of this legal issue is *de novo. Doyle v. Kamenkowitz,* 114 F.3d 371, 374 (2d Cir.1997); *Mautner v. Hirsch,* 32 F.3d 37, 39 (2d Cir.1994).

■ As previously noted, the IDEA authorizes the award of reasonable attorneys' fees to the parents of a child with a disability who is the prevailing party. 20 U.S.C. § 1415(i)(3)(B). In determining that J.C. was a prevailing party and, thus, entitled to attorneys' fees, the District Court applied a two-part test, under which a party "prevails" whenever (1) the party obtains relief, and (2) there is a causal connection between the filing of the litigation or administrative proceeding and the relief obtained. *See G.M.,* 173 F.3d at 81 (citing *Wheeler v. Towanda Area Sch. Dist.,* 950 F.2d 128, 131 (3d.Cir.1991)). To meet the second part of this test, the District Court relied upon the catalyst theory of recovery, which finds a causal connection " 'where even though the litigation did not result in a favorable judgment, the pressure of the lawsuit was a material contributing factor in bringing about extrajudicial relief.' " *Id.* (quoting *Wheeler,* 950 F.2d at 132). In awarding fees, the District Court determined that J.C. obtained all the relief he had sought and that the demand for a due process hearing was the catalyst to this recovery because it "was a material contributing factor in bringing about the settlement." *J.C.,* 115 F.Supp.2d at 300–01.

Following the District Court's decision and the appeal to this Court, the Supreme Court decided *Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Resources,* 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001), which clarified the term "prevailing party." The decision held that, to be a prevailing party, one must either secure a judgment on the merits or be a party to a settlement agreement that is expressly enforced by the court through a consent decree. *Buckhannon,* 121 S.Ct. at 1840. The Court further held that results obtained without such an order did not supply a basis for an award of attorneys' fees because "[a] defendant's voluntary change in conduct . . . lacks the necessary judicial *imprimatur* " to render the plaintiff a prevailing party. *Id.* The Court expressly rejected the catalyst theory as a predicate for recovering attorneys' fees because "[i]t allows an award where there is no judicially sanctioned change in the legal relationship of the parties." *Id.*

*Buckhannon* concerned the fee-shifting provisions of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12205, and the Fair Housing Amendments Act of 1988 ("FHAA"), 42 U.S.C. § 3613(c)(2), but the decision expressly signaled its wider applicability. The Supreme Court observed that Congress authorized attorneys' fees for prevailing parties in numerous fee-shifting statutes. To support this proposition, the Court cited *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), which considered the award of fees under the Civil Rights Attorneys' Fees Awards Act of 1976, 42 U.S.C. § 1988 ("§ 1988"), and held that the standards used to interpret the term "prevailing party" under any given fee-shifting statute "are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.' " *Id.* at 433 n. 7, 103 S.Ct. 1933. The

IDEA's legislative history demonstrates that Congress intended the term "prevailing party" to be construed consistently under the IDEA and other fee-shifting statutes. In adding a provision for attorneys' fees to the Education of the Handicapped Act (renamed the IDEA in 1990), the Senate Committee on Labor and Human Resources stated that "[i]t is the committee's intent that the terms 'prevailing party' and 'reasonable' be construed consistent[ly] with the U.S. Supreme Court's decision in *Hensley v. Eckerhart*, 461 U.S. 424, 440, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)." S.Rep. No. 99–112, at 13 (1986), *reprinted in* 1986 U.S.C.C.A.N. 1798, 1803 (footnote omitted). Accordingly, it is clear that Congress intended "prevailing party" under the IDEA to have the same meaning as "prevailing party" under § 1988.

Prior to *Buckhannon*, our Circuit showed fidelity to *Hensley* by construing "prevailing party" consistently across various fee-shifting statutes. *See, e.g.*, *NAACP v. Town of East Haven*, 259 F.3d 113, 117 n. 5 (2d Cir.2001) (applying precedents addressing attorneys' fees awards to a Title VII case "without regard to whether they involved Title VII or some other federal statute"). For example, we relied upon case law interpreting "prevailing party" under § 1988 when applying the catalyst theory to the IDEA. *G.M.*, 173 F.3d at 81 (citing *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 789, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989) and *Koster v. Perales*, 903 F.2d 131, 134–35 (2d Cir.1990)). More recently, we extended the Supreme Court's holding in *Buckhannon* to § 1988, concluding that "[although] the holding in *Buckhannon* applied to the FHAA and ADA, it is clear that the Supreme Court intends the reasoning of the case to apply to § 1988 as well." *NY State Fed'n of Taxi Drivers, Inc. v. Westchester County Taxi & Limou-*

*sine Comm'n*, 272 F.3d 154, 158 (2d Cir. 2001).

Notwithstanding *Buckhannon*'s broad application, J.C. argues that the IDEA differs from other statutes with fee-shifting provisions and requires a different interpretation of "prevailing party." First, J.C. claims that the IDEA "involves a multi-tiered administrative process designed to function without any court involvement." Pl.'s Supplemental Br. at 5. This argument is unpersuasive, however, because the ADA, which was at issue in *Buckhannon*, also requires parties to exhaust administrative processes prior to litigation.

Next, J.C. argues that the catalyst theory should still apply because of certain unique features inherent in IDEA proceedings. J.C. contends that the Act is calibrated to achieve the early, informal resolution of student placement controversies. Pegging fee awards to civil judgments or due process hearing awards, J.C. argues, would undermine this goal by tacitly encouraging counseled parents to avoid settlements at the IEP stage and to pursue due process hearings or civil litigation for which fees are recoverable. This argument is simply not viable after *Buckhannon*, which considered and rejected various policy arguments in favor of the catalyst theory. *See* 121 S.Ct. at 1842–43. Further, it is difficult to reconcile J.C.'s policy argument for awarding fees pursuant to informal settlements with the fact that, even before *Buckhannon*, Congress deliberately chose not to allow the recovery of attorneys' fees for participation in IEP proceedings that were not convened as a result of an administrative proceeding or judicial action. 20 U.S.C. § 1415(i)(3)(D)(ii). The IEP Team is a mechanism for compromise and cooperation rather than adversarial confrontation. This atmosphere would be jeopardized if we were to encourage the participation of

counsel in the IEP process by awarding attorneys' fees for settlements achieved at that stage.

Finally, J.C. argues that, even if *Buckhannon* governs the IDEA, the award of attorneys' fees in this case was proper because the IEP is more of a judicial consent decree than a private settlement. J.C. contends that the IEP changed the legal relationship of the parties because it is required by statute for all disabled children and because it is legally binding on the school board. We disagree. The fact that the IEP is required by statute only distinguishes it further from a judicial order or decree. Any legal obligation to develop and implement an IEP arises from the IDEA's statutory mandate and is not part of a judicial remedy. Moreover, even if the IEP changed the legal relationship between the parties, this change was not judicially sanctioned, as required by *Buckhannon*.

■ Although the District Court based its decision upon the IDEA, J.C. initially sought attorneys' fees under both the IDEA and the Rehabilitation Act. The District Court declined to consider the Rehabilitation Act claim, noting that the parties had failed to brief the issue. *J.C.*, 115 F.Supp.2d 297, 299 n. 2 (D.Conn.2000). Courts of appeals have discretion to decide what issues may be addressed for the first time on appeal because "there are circumstances in which a federal appellate court is justified in resolving an issue not passed on below, as where the proper resolution is beyond any doubt." *Singleton v. Wulff*, 428 U.S. 106, 121, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976). We have chosen to exercise such discretion in cases where the issues not addressed below involved purely legal questions. *See Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 88 (2d Cir.1996); *Bornholdt v. Brady*, 869 F.2d 57, 68 (2d Cir.1989). Because the Rehabil-

itation Act claim raises a purely legal issue whose resolution is no longer open to serious question, we elect to address it.

J.C. now argues that Congress intended the Rehabilitation Act to be broader in scope than the IDEA and, even if he is not entitled to attorneys' fees pursuant to the IDEA, he is a prevailing party under the Rehabilitation Act. This is a question of first impression in our Court, and we join our sister Circuits in holding that the meaning of "prevailing party" under the Rehabilitation Act is identical to the meaning of "prevailing party" under § 1988. *See Pottgen v. Mo. State High Sch. Activities Ass'n*, 103 F.3d 720, 723 (8th Cir.1997); *Child v. Spillane*, 866 F.2d 691, 692 n. 1 (4th Cir.1989); *Disabled in Action of Pa. v. Pierce*, 789 F.2d 1016, 1018–19 (3d Cir. 1986); *Hall v. Bolger*, 768 F.2d 1148, 1151 (9th Cir.1985); *Jones v. Ill. Dep't of Rehab. Servs.*, 689 F.2d 724, 730 n. 8 (7th Cir. 1982); *see also Pickman v. Dole*, 671 F.Supp. 982, 986 (S.D.N.Y.1987). Accordingly, the Supreme Court's holding in *Buckhannon* and our holding in *New York State Federation of Taxi Drivers* regarding § 1988 are applicable to the Rehabilitation Act. We conclude that J.C. is not a prevailing party under the Rehabilitation Act's fee-shifting provision.

## CONCLUSION

Because the Supreme Court's holding in *Buckhannon* governs J.C.'s claims pursuant to the IDEA and the Rehabilitation Act, the judgment of the District Court is reversed and J.C.'s cross-appeal requesting additional fees is denied. The case is remanded to the District Court with instructions to dismiss the complaint.